My client, Emmanuel C. Goh, was a soldier of the Army of the Commonwealth of the Philippines during World War II. During the occupation of the Philippines, he served as a guerrilla, and following the end of the war, he came to the United States where he lives now, became a citizen, and now currently lives in Southern California. In 2009, the Congress of the United States passed a law called the American Recovery and Reinvestment Act in which they provided certain benefits to Filipino veterans. We appreciate that, but we must figure out how to overcome the hurdle of the absence of records after search. The issue here, Your Honor, is that my client complied with all the regulations, rules, and procedures provided to provide for his entitlement to these benefits. Did he go to a service department correction board? He did not go. What he did do is he went to the appropriate one, which was the National Personnel Records Center. But the NPRC says that he has to go to a service correction board. What service correction board could that possibly be? The respondent says he should go to a service department, but he doesn't name the service department. The only service department that ever had any jurisdiction over the records of Filipino veterans was the Army. They were co-located with the National Personnel Records Center in St. Louis. They transferred not alone the records, the database, but the jurisdiction to determine claims to NPRC. Including the jurisdiction to correct records? Including the jurisdiction to review all claims arising out of the claims of service. That is detailed in an NPRC letter, which is set forth in our brief and set forth in our appendix. Well, you wouldn't dispute that the law says there has to be verification. In other words, you're not arguing, are you, that we should simply say, if a claim is made but we can't find the records, we should still award the funds? What I'm saying is that the claimant submitted detailed documentation of service, including documentation from the Commonwealth of the Philippines, substantiating his service, in addition to extensive affidavits and other evidence, nobody will review it. That's the basis of the issue before this court. When you say nobody will review it, did you actually go back to the NPRC to confirm that they reviewed it? We did. After we submitted the application with all the documentation to the Veterans Administration and they transferred that to the regional office of Manila, Manila applied to the NPRC and the NPRC responded, he is not a veteran. Following that, we submitted a letter directly to the NPRC, enclosing all the documentation, citing the relevant cases, saying that this is the proper procedure, they never reviewed it. They just, again, asserted... How do you know they didn't review it? Because they came back and said... Because they never referred to it. They said his name, they denied his application because they said his name does not appear on our records. There was no reference. They were clearly responding to the information that you sent, correct? No. They responded only to the records they had. That's the whole issue in this case. They never reviewed these records. You actually say in your blue brief that the whole issue is that we should overturn SORYA, which we don't really have the authority to do, but that's what you say the whole issue is. You never asked for a remand for purposes of requesting that the NPRC confirm that it looked at this information, or you don't ask for a remand to have the VA make that request. All you say is that you want us to change the policy. No. What I'm saying is that the policy was based on two fundamental errors that were unknown at that time, but were brought forth in this case. Error number one is that the NPRC will review records submitted to them, evidence submitted to them by a veteran. Error number two is that the NPRC database is sufficient to determine whether an applicant, a Filipino applicant, is a veteran or is not a veteran. And we have proven, and there's been no dispute over this, that the database is so flawed that they can only affirm that he is a veteran if their records show that. Mr. Jewell? Yes, sir. I looked in the attachments. I see a confirmation of military service from the government of the Philippines. I'm sorry, sir? I see a confirmation of military service from the government of the Philippines. That's correct. It's a document. What else did you provide in the way of actual documentation to show his service? Because I don't see anything else. There were 10 documents submitted to the NPRC. Where are those in the appendix? Those are listed in our letter of submission, and that was dated December 8, 2009, and is set forth in the appendix on page 45. And that details all the different documents, including the document that you referred to, and all we were asking for is a fair evaluation of that evidence. We never got it. What we have here is a dispute, if you will, between two government agencies, the Veterans Administration on one hand, the NPRC on the other. I don't know if the error is in what was provided to me by the court or what was submitted, but perhaps the reason I don't see that is because I have corrected appendix page 44, and then it goes to corrected appendix page 47. No, I agree. There's no 45. If I looked through here, I didn't see a thing, but I didn't see that there were missing pages. That letter you say is not contained in the appendix? No, there's a missing page. There's two missing pages, 45 and 46. Well, the NPRC letter of, well, that's November 19th. The NPRC letter of December should be in appendix page 45. I'm sorry if it's not there. It's contained in appendix 45. Why doesn't the record contain these affidavits if they're of such import? Which affidavits? You said there were at least 10. Nobody would read them. That's the entire thing. They were submitted to the VA. They wouldn't read them. I didn't ask if they were read. They were submitted to the NPRC. Why aren't they in the record? They are in the record. I'm sorry. Why aren't they in the appendix then? I have no answer for that. My understanding is that they were located on page 45 of the appendix. That page is missing. I apologize. I'm sorry. You told me that there was a letter listing them. There is, and that letter is I wrote it. Listen to what I'm asking you. Yes, sir. I'm not asking for a list of them. I'm asking why haven't I seen those 10 documents? Those 10 documents were part of the submission made to the regional office with his application. And why are they not in the appendix? I'm sorry. I cannot answer that. The only thing I can tell you is that those documents were duly submitted to the Veterans Administration, and the Veterans Administration failed to send those to the NPRC. We submitted those documentations to the NPRC. They refused to review them. You're arguing some sort of abuse of standard of review, and yet you haven't given us the documents upon which you claim that abuse occurred. The evidence that abuse occurred is in the response that the NPRC gave to that submission. The letter submitted the documents. There's no dispute on that on part of the respondent or the VA. The NPRC refused to review those documents. Supposing those were blank sheets of paper. Then I would have no argument with them. They were not blank pieces of paper. We don't know that. It's not in the record before us. That's my problem. I will check the appendix because if they are not on page 45 or 49, 49 was the response. Page 45 of the appendix was the letter. On page 35 of the appendix, there is a letter dated August 11, 2009, in which, or at least one page of the letter, in which it appears that you have set some enclosures. That was the letter. It should have been dated December 8, 2009. Their response was January 18, 2010.  What I want you to do is to review the existing procedures, rules, and regulations governing the review of documents submitted by applicants, Filipino applicants, on behalf of their service and to obtain benefits that they're entitled to. Under the current situation, under the current set of rules, the applicant submits his documentation and his application to the regional office. In this particular case, it was transferred to the regional office in Manila. The regional office in Manila did not look at the documents, did not transfer them to the NPRC. NPRC responded and said, he's not a veteran. Responded to whom? To the regional office. NPRC responded to the regional office. We then submitted all those documents, under the cover of that letter, December 8, 2009, to the NPRC and cited the proper cases and so forth and said, review these documents. This is what we were told to do. You see our dilemma. Let's hear from the other side, and we will inquire of counsel as to whether the secretary has reviewed these documents. Thank you for your consideration. I'll be happy to answer any further questions. Good morning, Your Honor. Mr. Goodman, you see our dilemma, of course. We're unable to consider the weight of this submission. Did you have an opportunity in preparing your response to look at the documents that are not in our record? I have seen the documents, Your Honor. Of course, it's beyond this court's jurisdiction to look at the specific documents and assess the weight of those documents, which is why they're not included in either of the appendices before this court. If Your Honor has looked to pages 44 and 45 of the supplemental appendix, that's not allowed. It's not beyond the scope of our jurisdiction to look at those documents and ask you questions about them. Of course, not at all, Your Honor. They are documents that were presented. Mr. Gould sent them to the NPRC and sent them to the regional office, the VA. The board specifically said in its decision that it had looked at all the records. It had reviewed all of them and found that none of them showed verification by the service department, which is required by the regulations. So that's the situation we find ourselves in. As this court explicitly said in Soria, the VA is entitled to ask the Army to certify that he is in fact a veteran. And we have a situation where he has no certification that he's a veteran. And that's the problem. And the Army has delegated that, essentially, to the NPRC, correct? The Army has delegated to the NPRC the records and searching through the records to determine who's on there and who's not on there. So look through. But I think that the argument is that the NPRC, instead of looking at everything that's submitted, they look at their own database, understanding that that database is flawed, and then say, if you're not in our database, we're not going to even consider all these other things that you gave us. Is that what's happening? Not exactly. I don't think there's any view of the Army that their database is flawed. Their conclusion is their database is the best that could possibly be done. In 1948, when they compiled all the records that were available of all the veterans, and they have a complete list, and NPRC looks to see who's on that list. They never said it was complete. I mean, I don't think you need to overstate the record. I think the record says many times that they were concerned. They knew that it was not complete. They know it's imperfect. It was the best they could do at the time, in 1948. So now we have a situation where, if Filipinos who said they served, and they say that they were a veteran, and they say the military records are incomplete, the military records are imperfect, there is an avenue for them. It's not the NPRC. It's sort of the Board of Correction and Military Records. And we cited to that in our brief. By statute... Could Mr. Goh do that today? He could. He could go today to the Board and ask the Board to look at the records and to change his military records. That's what the Board does. That's what they're set up to do. Did the VA tell him that at the time? VA didn't explicitly tell him that, no. The NPRC says on their website, and they explain that what they do is just search the existing records. They don't add to the records. They can't change the records. So if somebody is seeking to change their records, they go to the Board of Correction and Military Records. Is there a mechanism by which the VA explains to these people that if they just go to the NPRC, they're going to fall through the cracks in large measure, or at least in some significant measure, and so that there's another way that you have to go about this? No, there's not, because that conclusion isn't reached. Because in many cases, somebody can go to the NPRC and they don't fall through the cracks. The NPRC verifies that their name is on the list and they search various aliases and they do all that they can and they find it. Then they verify to the VA that there's been service. Any harm in warning that a lot of you out there will fall through the cracks? So if you're not on this database, you need to go do this? No, there's certainly no harm in doing so. And for that reason, we explicitly said in our brief that Mr. Goh could go to the board and ask for the board to assess these records now. There's no particular reason, though, that the VA would in all cases say when they're asking the NPRC, did this person serve, would automatically say, if the answer is no, you can go to the board, because in not all cases does the veteran think that he has sufficient information to convince the board to change the records. I mean, again, wouldn't that seem to make sense, that the response would be the NPRC can't verify you, so your only avenue of possible relief, and we don't guarantee you that you're going to have this relief, is to submit sufficient evidence to the board to have this corrected. Well, it's possible relief, Your Honor. It's not necessarily driving to the record. But it seems silly that we have to get here before the VA explains to Mr. Goh that he has another possible avenue of relief. Well, Mr. Goh was ably represented by counsel, and so this is not a situation where Mr. Goh comes in and needs to know about a whole other avenue of relief that's available to him. Well, Mr. Goh provided an official document from the government of the Philippines, and nowhere in the record does it say, we have reviewed this document and we're not going to accept it. In terms of the entirety as to what was or wasn't reviewed, because we don't know what happened, and you say that the only place that he could have gone to get this document reviewed is the correction board, because all of the other places that he went, look at their database, which everyone agrees is flawed, and that didn't show him on the database. Well, the Board of Veterans Appeals said that they looked at the document, and we don't know if the NPRC looked at the document. The NPRC says we've seen your submission, and you're not there. They said you're not there, and they didn't comment on the submission official document from the government of the Philippines, which said, according to our records, he was a guerrilla. By statute, Your Honor, the VA can't go to the Board of Correctional Military Records and say, here's all this evidence that he submitted, look at this. The claimant has to go himself. My thought question was whether the VA might suggest to this veteran that there is an avenue, the only available avenue, that is not necessarily bound by the database that they have. The VA could have so suggested, of course. We don't think that the VA needs to, in all cases, think of every possible avenue for relief. But, Your Honor, you appear here, and you say he has to lose because he didn't take this significant avenue of relief, so it isn't every possible. Well, in this case, Your Honor, the argument he was presenting is that the court needs to overturn SORIA, and that the VA needed to do, to review these documents itself. And that was the argument that we were presented with. And that was the argument at the Veterans Court as well. So all along, he wasn't saying, what can I do to have these records reviewed? What he was saying is, he wants the VA to do it. But the NPRC does have to take those documents to the extent that, and that's one of the reasons I'm very disturbed by not being able to see it, to the extent that they get an affidavit from somebody who says, I was a lieutenant in the guerrilla organization that worked under this particular leader, and Mr. Goh served under me. Don't they have to at least go look and see if they can find the lieutenant's records of his unit, and see if Mr. Goh shakes out of those records in some fashion, don't they? Yes, the NPRC has to do a thorough review of all the records to see if they can find any evidence that would support it. And there's no evidence here that they can do that. Those affidavits certainly can be relevant for purposes of making that search. That's correct. And that's why this court said in Capellan that the records need to be presented to the NPRC. Here, they were presented to the NPRC. The NPRC has those records. But all the VA can do is determine, what did the Army say? And the Army, through the NPRC here, said after looking at all those records, the answer is still no. So we don't know exactly what the NPRC did, but the presumption that the government does what it's supposed to do applies, that the NPRC did what it's supposed to do. It looked at all the records, and it didn't find anything here. Capellan said that the VA had to submit those records to the NPRC, did it not? Yes, it did. All right, but your argument here is that, well, we didn't really have to follow Capellan because he did it himself directly. But is it possible that the NPRC would have a different response to a submission from the VA than it might from the veteran himself? That would be to assume that the government is acting in a way it shouldn't. Because, no, the NPRC, whenever it receives these documents, is supposed to conduct a review. So more importantly for this court's review... We all know the government never acts in a way it shouldn't. Never. We do know that in this case, the veterans court said it was harmless error. And the veterans court specifically addressed that issue, that the records weren't sent from the regional office, that they were sent directly from Mr. Goh to the NPRC. And the veterans court said that's harmless error. That finding, this court can't review under this court's decision in Newhouse. So even if there was a Capellan error here, it's set to the side. So the situation for Mr. Goh is, if he believes that he has sufficient documentation, he can go to the Board of Correctional Military Records, he can ask the Board, and he can obtain judicial review of that determination should it be adverse to him. So his avenues aren't done. He has a place to go. The place just isn't the VA, because the regulations in this court's decision explicitly say that VA is not where he needs to go. Why are we using those pages? I mean, are they in your appendix? Yes, Your Honor. At page SA44 and 45, they're in the appendix. They're also in the appendix that Mr. Goh filed. They are the pages he cited in the version that I printed off. I think it was just a problem of printing within the court. Are there no further questions? We respectfully request that the court affirm the decision of the veterans court. You're saying that the missing pages are misnumbered? No, Your Honor. They're not printed. He's saying we must have messed up in printing them off. They are in document number 13-9 in the court's docket. They do appear at page 45 and 46, where Mr. Gould said they were. And they're also in the supplemental appendix at pages 44 and 45 with the red cover that we submitted yesterday. But who is sending to us those two pages? Sorry? They're in, Your Honor. We submitted a supplemental appendix yesterday with a red cover, and at SA44 and 45 are those pages. Oh, okay. Yes, we did get a supplemental. So they are in there? They are in there, Your Honor. So on page SA44 are the ten documents listed there as enclosures. Those are the documents he was presenting. And those were the same that were previously pointed out as being at page 35, I think. Yes, they are. Yes, Your Honor. They're the same documents that were presented both to the regional office and then to the NPRC. Okay. Okay. Anything else for Mr. Goodman? No. Okay. Thank you. Thank you very much, Your Honor. Mr. Goodman? Mr. Goodman? Thank you. I do have page 45 in the appendix with that document, if I may approach the bench. You don't have to. We've already been informed of what it is. All right. I don't know how that error occurred. The fundamental issue here is that there is apparently a dispute between the Veterans Administration and the NPRC as to whose responsibility it is to review documentation submitted by a Filipino veteran. The NPRC won't do it. That's not what we're hearing. In the letter in which they responded to this document, they never referred to these documents. They never referred to this letter. What they said, and I quote directly from that, Where are you? I'm quoting from the letter on appendix 9. This is the response letter, and that's on page 49, where they say, Emmanuel Gozde is not shown on the official records and archives and file at this center. Therefore, your request cannot be favorably considered. Nowhere is there a reference to the documentation that we submitted. There's no statement that they reviewed it. Either way, they don't say, Hey, we didn't look at what you sent. That's right. They don't say they didn't review it. All they say is, affirmatively, their decision is based upon their records. Right, but that's what they have to do. That's what they have to do. Then who says that they have to review our records? They didn't do that. This is the problem in this case. The VA says, send everything to the NPRC. We send it to the NPRC. What if the NPRC said, you don't show up in our records? Why didn't you go to the Board of Military Corrections? At that point, the normal course of appeal, as far as I understand it, is if we go to the Board of Veterans' Appeals, or the RO, we appeal then to the Court of Appeals for Veterans' Claims, which we did, and what did the Court of Appeals for Veterans' Claims say? They said, even though they didn't say in their response letter, the NPRC, that they didn't review this, that maybe they did, because they didn't say they didn't. This is the argument that they made, and by the way, the respondent didn't disagree with the basis of our appeal, and that that reasoning was flawed. Do you disagree that you could go to the Board of Military Corrections right now? I disagree that there is, from where? From this court? No, just the records. The normal route of appeal, as I understand it. It's a different administrative process, where you go to get the records corrected, so that the NPRC's records become meaningless. The records are the records that are in the possession of the National Personal Records Center. Those records have been proven, beyond a doubt, to be flawed with respect to Filipino veterans. We have provided documentation to the keepers of those records, which is the NPRC. But their job is not to change those records, Mr. Gould. They are the keepers. I agree with you. I totally agree. Is their job to review documentation that we submit? Only for purposes of searching. And if they search, what do they find? They have a flawed database. Then you go to the Board of Corrections and try to correct his records. And try to correct which records? The NPRC's records? That's correct. There's no way of correcting those records. They came from a disaster situation in the Philippines. ...his military status with this additional information, and then he gets submitted to the NPRC records database. So, is it your feeling now that the process that we followed, which conformed exactly to what has been told to us by this court, by the VA... Let me give you an analogy. The process is right. The process you followed was correct. But there's an alternative avenue if they don't find you in the database. Which is to say, we've got information that shows that that gap in the database is wrong. And so you correct the military records, and then that military record gets inserted into the database. May I suggest an analogy, if I may, please? In 1973, the NPRC had a fire which destroyed 80% of the records of World War II Army veterans. What happened when veterans who did not have their discharge certificates appealed to the VA for entitlement? The VA became their advocate. They went through the whole process of aiding and assisting them to establish their entitlement. It was an honorable thing to do. It was the proper thing to do. The VA is an advocate for veterans. And they're the ones who have the responsibility of taking information supplied by a veteran and assisting them in making their entitlement. That analogy should apply directly to the case of these veterans here who cannot get their validation from a flawed database. And I suggest to you that the respondent has not disagreed with our conclusions with respect to the court of appeals from which the appeal is made to this court. They have not disagreed that the database of the NPRC is faintly flawed. They have not disagreed with the fact that neither the Veterans Administration nor NPRC will grant this veteran due process. He is left without a remedy because of the dispute between two government agencies. Okay. Thank you, Mr. Gould. Thank you very much. I appreciate your consideration.